at all. All right, so Mr. Williams, we'll hear you the second time now. This is a completely different case. You have reserved for this one four minutes of rebuttal off of ten minutes total, so the floor is yours. It's difficult shifting gears. Yeah, a little bit, right? Yeah, from completely unrelated cases. I want to start by pointing out that I filed my brief and I sought to submit an amended brief. The Court would not allow me to file that. In this Court? Now, in the moment, there are some issues with this brief with hallucinated cases and cases that have not been cited for the — for the — exactly for the principle. I listed those in my motion to file the amended brief. My concern was that these cases would actually find their way into the decision of the Court, which I have brought with me copies of the four-page motions. I'd like to provide that so you can provide it to your clerks. No, I don't think we need that. I mean, you documented that. You — It was documented and it was defaulted. Yes. Okay. I just want to make sure that you're aware of that. Okay, so on to the case itself. The — there are basically three issues, three substantive issues in this case. There is the FAA delay on the CFI exam. Then there is the DMV suspension issue. And then the third issue is the Gaitlin interpretation. The — on the FAA CFI scheduling issue, a fundamental mistake was made by the District Court, and that is that no medical is required. So the District Court determined that the case became unright when the medical expired. But in fact, there was no medical needed to take the exam. Every other consequence of the case came from the delay in providing the CFI exam. With the second question, it's down to whether the DMV can suspend driving privileges for now 21 years based on the failure to pay a $35 fine without having any ability to seek a wolfiness test question. And then I think the Gaitlin interpretation that has been well dealt with in the briefs. This is basically an APA issue dealing with whether the Perez applies and they can amend the — effectively change the rules rather than just interpreting the rules. But I guess I have a factual question. I mean, the log book endorsement and the knowledge, you know, the current knowledge test report, by the time the District Court ruled, those had expired. So we need to look at the timeline carefully. I was ready for the exam on the 15th of July. In order to qualify to be ready for the exam, I needed a written exam, which is then valid for two years, and that remained valid until July of the following year, considerably beyond that point. I also needed an endorsement from the instructor in my log book saying that basically I'm ready to take the exam, and he also has to sign the endorsement. So basically it's part of the application process. Fill out the form, get the signatures, you're ready to take the test. But my question is, by the time the District Court ruled, those two things were no longer current. Is that right? So I actually sought an emergency motion to get a ruling, and the District Court then delayed decision for three months. So by the time the District Court ruled, the log book endorsement and the signature on the application had already expired by about three months. Yes. So unless you have any other questions, I think that basically covers it. All right. Well, you reserved some time for rebuttal. I did. I did. Your adversaries have split their time, so we're going to hear from Mr. Larson. Is that right? That's right. Okay. And you've got five minutes, Mr. Larson. Thank you, Your Honor. Good morning, and may it please the Court, John Larson for the federal defendants, which is the FAA and certain federal employees or actors. To answer Your Honor's question directly about on the ripeness issue that Mr. Williams just  What office are you from? The United States Attorney's Office in Connecticut. Thank you. Thank you, Your Honor. So, yes, by the time the District Court had ruled and, frankly, shortly after the case had been filed originally in District Court, Mr. Williams' log book endorsement expired. He, by his own admissions in the pleadings, became ineligible to take the practical test that he was asking the District Court compel the agency to provide him. In his first amended pleading after the expiration, that's in the government's appendix at 94, he admitted that his log book endorsement expired at the end of 2022, and his knowledge test was set to expire and then did expire in July of 2023. So with respect to the ripeness issue, Your Honor, ultimately what Mr. Williams is asking and did ask the District Court to do was to compel under the APA or under the Mandamus Act agency action that he had characterized that had been unreasonably delayed. But by the time a ruling on those claims was ready, he was no longer eligible to take the test that he had asked the District Court compel the FAA to administer to him. Ultimately, those issues became unripe shortly after Mr. Williams filed the lawsuit. There was no question about either of those facts. There's no question that ripeness is ultimately an issue of timing, and the entire justiciable doctrine of ripeness is designed to avoid hypotheticals, contingent future events, avoid deciding issues that are not live disputes. Here we are several years later. There's nothing in the record to indicate that Mr. Williams ever became eligible again to sit for the practical test that he is asking the District Court to require the FAA to administer to him. And as we're sitting here before this Court, what he's effectively asking this Court to reverse on and to seek a District Court order compelling the FAA to administer a test that he hasn't been eligible to take since 2022. That ultimately, I think, perfectly demonstrates how the matter is not ripe for adjudication. There were allegations in Mr. Williams' first amended complaint from April of 2023 where he explained, admitted in the pleadings, how he had to repeat his And apparently, based on what's in the record, that never happened again, either because of those physical issues or for some other reason. He never became eligible again. And so ultimately, the matter became unripe in the course of the litigation and is not ripe today. The other issue that Mr. Williams mentioned in his argument that does pertain to the Federal Government is this, is the interpretive rule issue. That's a different APA issue. And as he pointed out, the briefing addresses this extensively. But I'll just say there's not a dispute as to the applicable standard. There's not a dispute that interpretive rules do not require notice of comment rulemaking under the APA. And frankly, the Gatlin interpretation is set forth in an addendum to the government's brief. It is a quintessential interpretive rule, as this Court has explained what interpretive rules are in suite at the D.C. Circuit, which very often deals with interpretive rules, explained in the FlightNow case, where the reasoning, I think, is particularly instructive. And a simple read of the Gatlin interpretation illustrates how the FAA took the language of the applicable regulation, construed it, provided its interpretation to the public, and did so in a way that was plainly based on the language of the interpretation, not some other legislative source of rulemaking. So as I mentioned, that's a quintessential example of interpretive rulemaking. It's not subject to the notice and comment rulemaking under the APA. And the district court therefore properly concluded that that aspect of Mr. Williams' complaint is subject to dismissal. So unless the Court has any questions, the government will rest on its brief. All right. Thank you very much. We'll now hear from Mr. Tetreault. You might pronounce it right, Tetreault. There may be different versions. Tetreault, but we're not in Quebec, so I'll answer to the other as well. What would you say? Tetreault. Tetreault. All right, Mr. Tetreault. You have five minutes. Thank you, Your Honor. May it please the Court, Brian Tetreault, for the Connecticut defendants, which includes the plaintiffs' defendants, the plaintiffs' vehicles, its commissioner, Antonio Guerrera, and Eileen Meskell, an assistant attorney general as well. The fundamental error in the plaintiffs' argument with respect to the Connecticut defendants turns on a misinterpretation of General Statute 14-140, subsection B, specifically the last sentence of that statute, which states, Mr. Williams hyper-focuses on that very last clause, dismissed by operation of law, ignoring the fact that in order for that to be triggered, there are two conditions precedent, one of which is that the suspension of his driving privileges is based on a failure, report of failure to appear, which isn't the case here. Here it was based on his failure to pay the fines imposed by the court for a speeding ticket. Secondly, the charges have to not otherwise have been disposed of. Here his, he was sentenced for the violation of speeding, and that went to final judgment. He appealed that, which he could not have done if it was not a final judgment. And all of the, whenever disposed of is used in the context of Connecticut case law, it tends to be with respect to a final judgment. Since neither of those conditions precedent is applicable here, there is no basis for him to claim that his suspension shall be dismissed by operation of law. That is really the beginning and end of the matter, but I'll just turn briefly to the specific constitutional claims Mr. Williams raised in his complaint. With regard to the procedural due process claim, which I think is the most fair reading of his complaint. I don't really see it as raising a substantive due process claim at all, but with regard to the procedural due process claim, the district court correctly concluded that he did not identify one of the three crucial elements of the Matthews test, which is he did not identify what process he was due but not afforded. With respect to the suspension of his driving privileges, he was issued a notice, he was afforded an administrative hearing, he then appealed that administrative hearing to the trial court, and after that court upheld the administrative ruling upholding the suspension of his license, appealed that to the appellate court in Connecticut, all of which concluded in his license remaining suspended. There is no other process that would be necessary in such context, and not having identified any process that he was due and not afforded, his procedural due process claim fails irrespective of his misunderstanding of General Statute 14-140. The trial court also, and I think in an effort to be especially solicitous to him as a pro se, even if he is, as Your Honor noted, trained as an attorney, addressed his claims as a substantive due process claim, but concluded that because none of the conduct alleged was egregious, outrageous, or conscience-shocking, and that the actions taken were not arbitrary or irrational in imposing a modest fine for speeding, that his substantive due process claims, to the extent his complaint could be read as raising such, must fail. Multiple cases have addressed similar issues, considering whether or not modest fine for speeding did not implicate substantive due process rights. Idris v. Chicago found that a $90 traffic violation was, quote, too modest to implicate a fundamental right. And in Schmidt v. Collins, again, these are all cited in our brief, a $500 vehicle impoundment fine was found not to implicate a substantive due process right. So for all of those reasons, and unless the Court has other questions, the State believes the district court's dismissal of Mr. Williams' complaint should be upheld. Thank you, Mr. Tatchman. Thank you. We'll now hear from Mr. Williams for up to four minutes of his honor. On the substantive due process issue you just mentioned, the Second and the Sixth did not agree with that, which you are. Did not agree with what? With that it was not a substantive due process issue. Is that a $35 fine for speeding? Well, they actually had considered it. Correct, Your Honor. The other issue dealing with 14-140B is an issue that the district court never engaged with. All it said was that it's clear that this is the situation, despite that this was argued in detail before the Court. The disposed of and disposition issue that was just addressed, that those two terms have very different meanings. You have a disposition, which is a final judgment creating an appeal, potential for an appeal. But disposed of means the end of the case. And that's why the legislature used this phraseology. On to the FAA issues. The logbook... I'm sorry. So what's left of the case? How do you mean? You're still referring to the issue of the... I was just referring to the DMV issue, right? Correct. So your adversary was going through the idea that the fine was issued, it was challenged, it was appealed. What is... So the issue, so there is no issue as far as the conviction is concerned. This is being conflated with the issue of the suspension, okay? The conviction is valid and continues, but it's the 21-year suspension of the driving privileges based on that. Right. But is there some current or was there some subsequent proceeding with regard to the suspension? What is left of that case? What is out there that is not final? So the final action in the State court was a determination that a notice of suspension notice, what was called the 14-140 notice, was issued to the DMV in 2015. At that point, the decision meant that there was... that the suspension was valid, but then there was a seven-year limit on that period, which ends in 2022. So at the time of the federal decision, that determination had itself expired. Does that answer your question? Perhaps not. If it doesn't, I don't understand. I understand what you're saying, whether or not I... Okay. I understand. Okay. On to the Gitlin issue. So the problem with Gitlin is that the interpretation in Gitlin actually created three different categories where the regulation only has two, and the three categories do not fit in with the regulation. They contradict the regulation. You cannot have an interpretation of a regulation which contradicts the regulation. That's by definition not an interpretation. That's a fresh regulation. The other thing I want to point out with the logbook, the FAA has continuously said, well, you did not maintain your logbook endorsement. But this case has now been going on for years. That would have meant flying and seeking a new logbook endorsement every... and filling out the form every 60 days. By definition, you have a 60-day period to take the test. The test is not given. So is that then your duty to go back and requalify for the 60-day period and present that again? It's a circular process. And then the unrightness issue that the FAA just talked... the federal defendants just talked about. There really is no such thing as unrightness. A case is ripe when it's filed, right? There's an example in the briefs where a case became unright, but that is because the predicate for the filing of the case was withdrawn by the Supreme Court, right? But a case is generally ripe when it's... must be ripe when it's filed. And it stays ripe. Perhaps it becomes moot. If a case becomes moot, then you have other issues, but not rightness issues. That's pretty much all I have to say. Thank you. Well, thank you. We will reserve the decision. That concludes our argument.